AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of California

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| | ) | |
| ANTHONY COATES. | ) | 2:24-mj-0054 JDP |
| | ) | |
| | ) | |

*Defendant*

**FILED**

May 01, 2024

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

SEALED

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___March 8, 2024 & April 4, 2024___ in the county of ___Sacramento___ in the

___Eastern___ District of ___California___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| COUNT 1 – | Distribution of at least 50 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (March 8, 2024). |
| COUNT 2 – | Distribution of at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (April 4, 2024). |

This criminal complaint is based on these facts:

See Affidavit of USPIS Postal Inspector Linsey Betts, attached hereto and incorporated by reference.

☒ Continued on the attached sheet.

_/s/ Linsey Betts_
*Complainant's signature*

Linsey Betts, U.S. Postal Inspector
*Printed name and title*

Sworn to me and signed telephonically.

Date: ___May 1, 2024___

*Judge's signature*

City and state: ___Sacramento, California___

Jeremy D. Peterson, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT FOR
ANTHONY COATES**

I, Linsey Betts, Postal Inspector with the United States Postal Inspection Service (USPIS), being first duly sworn, hereby depose and state as follows:

## I.   PURPOSE

1.    This Affidavit is submitted in support of an arrest warrant and criminal complaint charging Anthony COATES with distribution of at least 50 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), occurring on or about March 8, 2024 (Count One); and distribution of at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), occurring on or about April 4, 2024 (Count Two).

## II.   AGENT BACKGROUND AND EXPERIENCE

2.    I am a Postal Inspector with the United States Postal Inspection Service (USPIS) currently assigned to the Sacramento, California field office. I investigate criminal violations of federal and state law, including illegal narcotics, firearms, and illicit proceeds being sent through the U.S. Mail; money laundering; robbery and burglary of postal employees and facilities; theft/possession of stolen U.S. Mail; mail and bank fraud; and identity theft crimes. I am a "federal law enforcement officer" within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure; that is, a federal law enforcement agent engaged in enforcing criminal laws and authorized to request a search warrant.

3.    I have been a full time sworn Postal Inspector with the USPIS since December 2021. In 2021, I completed sixteen weeks of Postal Inspector Basic Training in Potomac, Maryland. This training involved the investigation of mail theft, drug and firearms trafficking, burglaries, robberies, money laundering, theft/possession of stolen United States Mail, mail and bank fraud, and identity theft crimes. I have received specialized training in narcotics investigation matters including, but not limited to, drug interdiction, drug detection and identification, money laundering techniques/schemes, communications analysis, and cryptocurrency/dark web investigations.

4.    Through my training, experience, and interaction with other experienced Postal Inspectors, Task Force Officers, and other investigators, I have become familiar with the methods

employed by drug traffickers to smuggle, safeguard, store, transport, and distribute drugs; to collect and conceal drug-related proceeds; and to communicate with other participants to accomplish such objectives. I have participated in and led investigations targeting individuals trafficking contraband via the U.S. Mail. I have participated in cases involving federal narcotics and firearms violations, including unlawful sales, possession, manufacturing, and distribution of narcotics and/or firearms. I have participated in a variety of different investigative aspects while conducting investigations with USPIS, including surveillance, undercover operations to conduct controlled purchases of contraband, interviewing suspects, and the execution of search and arrest warrants. I have written search, seizure, and arrest warrants related to drug and firearms trafficking investigations, drug proceeds investigations, and parcel interdiction.

5.     The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from other law enforcement personnel and witnesses, including my review of reports prepared by other law enforcement officers and agents. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not purport to set forth all my knowledge of the investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III.     <u>SUMMARY OF INVESTIGATION</u>

6.     As discussed in further detail below, Anthony COATES, a convicted felon, distributes large quantities of methamphetamine and counterfeit pills containing methamphetamine in the greater Sacramento, California area and across the United States utilizing the U.S. Mail.

7.     Agents have seized approximately six pounds of methamphetamine from parcels shipped by COATES and identified at least 17 parcels of suspected narcotics mailed by COATES since August 2023 to multiple States, including New York and Florida. Shipping records indicate COATES and/or his co-conspirators have shipped dozens of parcels to other states as well. Agents have also conducted controlled purchase operations with COATES during which an undercover agent purchased counterfeit pills and methamphetamine.

## IV.   STATEMENT OF PROBABLE CAUSE

A.   **On multiple occasions, law enforcement seized parcels of drugs and/or drug proceeds shipped between COATES and/or his co-conspirators and a suspect in New York.**

8.      In September 2023, USPIS seized a parcel containing approximately ten pounds of methamphetamine, which was mailed from a post office in the Sacramento area to an address in Ithaca, NY. A review of USPS telecommunications records showed numerous online customer tracking inquiries conducted for the seized parcel. During my review I observed additional, related, online customer tracking inquiries conducted for other parcels shipped from California to two addresses in New York (in West Hempstead and Westbury), and for parcels shipped from New York to an address on Dunlay Drive in Sacramento. Based on my training, experience, and the contents of the seized parcel, the back-and-forth parcel shipments between New York and California appeared to be consistent with the trafficking of narcotics and narcotics proceeds.[1]

9.      In October 2023, while reviewing USPS business records, I observed five parcels were mailed from the Sacramento area to the two addresses in New York I had previously identified. All five of the parcels bore the return address of "Trevor Cyprus 7729 Agate Beach Way Antelope, CA 95843." Each box weighed approximately eight pounds and bore "e-Bay" branded packing tape. I obtained surveillance video from the mailing facility which showed a male adult subject carrying the parcels inside, paying for the postage with cash, and using a cell phone during the transaction. This subject was later identified as Anthony COATES.[2]

10.      I spoke with Postal Inspectors in New York who were aware of an ongoing law enforcement investigation regarding the suspected recipient of the parcels from California (hereafter referred to as the "New York suspect"). Law enforcement found that the New York suspect was directly

---

[1] Specifically, I know from my training and experience that individuals trafficking narcotics via the U.S. Mail will often ship to or from several different addresses in the same geographical area in an effort to evade law enforcement detection. Furthermore, these individuals will often use fictitious names on the parcels that do not associate with the addresses they ship to and from. I noted that the parcels observed shared many of these same characteristics. I therefore believe that these shipments were consistent with the shipment of narcotics.

[2] As described in paragraph 11, in November 2023 I seized a parcel associated with this investigation which was addressed to "Anthony Coate." I conducted a search of this name in law enforcement databases and on social media websites. I compared the photos I found to the individual in the video surveillance and observed that they resembled each other.

Affidavit                                   3

associated with the identified address in West Hempstead, and the address in Westbury belonged to one of the suspect's associates. A review of USPS business records showed the New York suspect regularly mailed parcels at USPS facilities, some of which were destined to addresses in California. Parcels mailed by the New York suspect often bore return address stickers bearing the same name and address in Nanuet, NY. The name on the return address sticker did not associate with the address.

11.     On November 3, 2023, I conducted a review of USPS business records and identified a suspicious parcel mailed from New York to Sacramento. I detained the parcel, which bore the same return sticker as previous parcels mailed by the New York suspect and was addressed to "Anthony Coate" at the Dunlay Drive address.

12.     On November 7, 2023, federal search warrant 2:23-SW-1137 CKD was authorized and executed on the parcel. The parcel contained $32,200 in US currency concealed inside multiple layers of plastic and heat-sealed packaging.

13.     A review of USPS tracking records showed that telephone number (279) 465-1074 called the USPS hotline twice to inquire about the parcel.

14.     On November 15, 2023, I spoke with COATES's assigned probation officer, who stated he regularly contacted COATES about probation matters at telephone number (279) 465-1074, which COATES provided to the officer as his personal cell phone number.

**B.     Law enforcement obtained federal search warrants authorizing the capture of GPS location data for two phones belonging to COATES.**

15.     On November 27, 2023, federal search warrant 2:23-SW-1190 was signed by United States Magistrate Judge Allison Claire in the Eastern District of California, authorizing the collection of precise location data from COATES's cellular telephone number 279-465-1074.

16.     Law enforcement has maintained continuous GPS location data search warrants for telephone number 279-465-1074 from November 27, 2023 to present.

17.     On February 23, 2024, federal search warrant 2:24-SW-0195 was signed by United States Magistrate Judge Jeremy D. Peterson in the Eastern District of California, authorizing the collection of precise GPS location data from telephone number (916) 500-8106, the COATES CELL PHONE.

18.     Law enforcement has maintained continuous GPS location data search warrants for

telephone number (916) 500-8106 from February 23, 2024 to present.

**C.      Law enforcement seized a parcel containing six pounds of methamphetamine that COATES mailed to New York.**

19.      A review of GPS location data for telephone number 279-465-1074 indicated that COATES traveled to the Los Angeles area on the evening of December 8, 2023, then returned to the Sacramento area the following night, December 9, 2023.

20.      A review of USPS business records indicated that on December 9, 2023, eleven parcels were mailed from the Los Angeles area to the two previously identified addresses in New York. Five of the parcels were mailed to the New York suspect at the West Hempstead address, and six were mailed to the associated Westbury address.

21.      A review of surveillance video collected by law enforcement at two different mailing facilities in Lakewood and Burbank, California showed Anthony COATES mailing the eleven parcels on December 9, 2023. COATES mailed five parcels from the Lakewood facility and six parcels from the Burbank facility. The video shows COATES waiting at the counter with the parcels, paying cash for the postage, and using a cell phone during the transaction. A review of GPS location data showed that COATES's cell phone (279-465-1074) was located near both mailing facilities at the time USPS business records show the parcels were mailed.

22.      On December 13, 2023, Postal Inspectors in the Eastern District of New York intercepted one of the parcels mailed to the Westbury address. On December 14, 2023, federal search warrant 23-MJ-1107 (SIL) was executed on the parcel, which contained over six pounds of a white crystalline substance which field-tested positive for methamphetamine.

**D.      On four separate occasions in 2024, an undercover DEA agent purchased drugs from COATES.**

23.      In December 2023, I learned of an ongoing investigation being conducted by Special Agents from the Drug Enforcement Administration (DEA). The case agents believed COATES was a narcotics supplier for several individuals suspected of narcotics trafficking. DEA case agents arranged for a confidential informant, who was an associate of COATES, to introduce an undercover (UC) DEA agent to COATES as a customer. The UC communicated with COATES via the cell phone number (916) 500-8106 (the COATES CELL PHONE), and later via the cell phone application "Signal" to

organize the purchase of narcotics. These "controlled purchases" were surveilled and monitored by law enforcement agents from DEA, USPIS, and members of the High-Intensity Drug-Trafficking Area Task Force (HIDTA).

24.    On January 11, 2024, law enforcement conducted a controlled purchase with COATES in Sacramento, California, in the Eastern District of California. COATES was located before the operation using the GPS location data from his cell phone, and was recognized by law enforcement agents on the surveillance team who had previously seen photos of COATES, including his DMV photo. According to DEA Special Agents, in the days leading up to the operation, the confidential informant[3] who introduced COATES to the UC confirmed that COATES was selling narcotics. COATES told the confidential informant that COATES had "5 boats of wheels" and "RP10s" available for sale.[4] During the operation, COATES identified himself as "Anthony ████" to the UC and sold approximately 439 grams of counterfeit Adderall pills to the UC for $1,500. Law enforcement then followed him to an apartment located on Deep Pond Lane in Sacramento, and observed him park his vehicle near the garage and enter the apartment. The GPS location data showed that COATES's cell phone (279) 465-1074 did not appear to move during the operation, but was located in the vicinity of the apartment for the duration.

25.    On February 14, 2024, a review of USPS records indicated a parcel was mailed to an address in Palm Beach, Florida from a mailing facility in Sacramento. I detained the parcel and collected surveillance video from the facility, which showed an individual who I recognized as COATES mailing the parcel and paying for the postage in cash. On February 16, I executed federal search warrant 2:24-SW-0179 on the parcel, which contained 27 grams of counterfeit Xanax pills.

26.    On February 15, 2024, law enforcement conducted a second controlled purchase with COATES in Sacramento in the Eastern District of California. COATES was located at the Deep Pond

---

[3] CS has been active since 2021 and has been working for consideration on a prior violation where he/she was convicted in 2011 of marijuana manufacture, conspiracy to possess with intent to distribute marijuana and served 60 months in prison and 60 months on probation. CS has no offenses related to dishonesty or credibility. CS has cooperated and assisted the DEA in controlled purchases that led into state arrests. Agents have been able to independently corroborate some of the information provided by CS related to the suspected drug trafficking activities by COATES as further detailed below. For these reasons, I believe CS to be reliable.

[4] Based on law enforcement training and experience, a "boat" refers to 1,000 pills, "wheels" refers to fentanyl, and "RP10s" refers to OxyContin pills.

1  Lane address before the operation using the GPS location data from cell phone (279) 465-1074. During

2  the operation, the UC recognized COATES as the same individual who had provided the Adderall on

3  January 11, 2024, and the surveillance team also recognized him from the previous controlled purchase

4  and from photos, including his DMV photo. COATES sold approximately 462 grams of counterfeit

5  Adderall pills[5] and 302 grams of counterfeit Xanax pills to the UC for $2,350. During the purchase,

6  COATES stated that he mainly deals in "powder," and "crystal," that he uses and sells Adderall, and that

7  he does not like "blues" because you can get a lot of time if you get caught with them.[6] Law

8  enforcement then followed COATES back to the Deep Pond Lane address and observed him park his

9  vehicle, check his mail at the community mailbox, and enter the apartment. The GPS location data for

10  COATES's cell phone (279) 465-1074 was consistently in his vicinity as law enforcement surveilled

11  him before, during, and after the operation.

12      27.     On March 8, 2024, law enforcement conducted a third controlled purchase with COATES

13  in Sacramento in the Eastern District of California. According to DEA Special Agents, prior to the

14  operation, the UC sent COATES a message offering $1,000 for one pound of methamphetamine and

15  asking to meet up to conduct the transaction. COATES responded that he would meet the UC after 2:00

16  PM. COATES was located at the Deep Pond Lane address before the operation using the GPS location

17  data from both cell phones (including the COATES CELL PHONE, 916-500-8106). Law enforcement

18  recognized COATES from the previous controlled purchases and photographs. Law enforcement

19  followed COATES as he picked up a rental car and then stopped at the Dunlay Drive address. Law

20  enforcement did not see which apartment COATES entered, but saw him leaving the complex carrying a

21  bag. He then traveled to the appointed location for the controlled purchase, where he sold approximately

22  512.4 grams of methamphetamine[7] to the UC for $1,000. Law enforcement then followed COATES

23  back to the Deep Pond Lane address. The GPS location data showed that the COATES CELL PHONE

24
25      [5] The counterfeit Adderall pills were later submitted to a DEA laboratory for analysis and determined to contain methamphetamine and to weigh approximately 427.1 grams net weight.

26      [6] Based on law enforcement training and experience, "powder" refers to cocaine, "crystal" (and "clear") refers to methamphetamine, and "blues" refers to counterfeit oxycodone/fentanyl pills.

27      [7] Law enforcement later submitted the methamphetamine to a DEA laboratory for analysis which determined a net weight of approximately 455.7 grams and to contain 451.1 grams +/- 30 grams of pure methamphetamine.

28

AFFIDAVIT                                          7

was consistently in COATES's vicinity as law enforcement surveilled him.

28.     On April 4, 2024, law enforcement conducted a fourth controlled purchase with COATES in Sacramento in the Eastern District of California. COATES was located at the Deep Pond Lane address before the operation using the GPS location data from both cell phones. Law enforcement recognized COATES from previous controlled purchases and from photographs. Also, before the operation, COATES communicated with the UC by sending photos and a video of a shipment of (psilocybin) mushrooms and asking if the UC knew anyone that would be interested. COATES also told the UC he could definitely get "clear" and could try to get the "blues" which would cost $1,500. Law enforcement observed COATES travel to a Taco Bell and meet with another individual, who arrived in a separate vehicle, entered the passenger side of COATES's vehicle, remained for about ten minutes, then exited and drove away. Law enforcement then followed COATES to the meeting location, where he sold approximately 1360 grams of methamphetamine[8] to the UC for $3,000. COATES told the UC he was unable to get the "blues" but would advise when he got some. Shortly thereafter, law enforcement saw COATES park near the Dunlay Drive address and enter apartment 313 carrying a backpack. The GPS location data showed that both cell phones were consistently in COATES's vicinity as law enforcement surveilled him.

## V.     REQUEST FOR COMPLAINT AND WARRANT

29.     Based on the facts above, there is probable cause to believe that on two separate occasions, Anthony COATES distributed methamphetamine, a schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1).  Accordingly, I respectfully request the Court issue a Criminal Complaint and Arrest Warrant.

## VI.     REQUEST TO SEAL

30.     I further request that the Court seal this Complaint, Affidavit, and associated papers.  The investigation is not yet known to COATES and his associates, and disclosure would seriously impede the investigation and/or provide COATES and other targets with an opportunity to destroy evidence or

---

[8] Law enforcement later submitted the methamphetamine to a DEA laboratory for analysis which determined a net weight of approximately 1,332.7 grams and to contain 1,319.3 grams +/- 87.3 grams of pure methamphetamine.

AFFIDAVIT

flee from prosecution. Accordingly, there is good cause to seal these documents because their premature

disclosure may seriously jeopardize the investigation.  Sealing these documents will help ensure the

safety of agents and others.

Respectfully submitted,

/s/ Linsey Betts
_____

Linsey Betts
Postal Inspector
U.S. Postal Inspection Service

Subscribed and sworn to telephonically
before me on:                                    May 1, 2024

Hon. Jeremy D. Peterson
U.S. MAGISTRATE JUDGE

/s/ *Haddy Abouzeid*
_____

Approved as to form by AUSA HADDY ABOUZEID

AFFIDAVIT

**United States v. Anthony Coates**
**Penalties for Criminal Complaint**

**COUNT 1:**

VIOLATION:                   21 U.S.C. § 841(a)(1) – Distribution of at least 50 Grams of a
                             Mixture and Substance Containing a Detectable Amount of
                             Methamphetamine

PENALTIES:                   Mandatory minimum of 5 years in prison and up to 40 years in
                             prison; or
                             Fine of up to $5,000,000; or both fine and imprisonment
                             Supervised release of at least 4 years and up to life

SPECIAL ASSESSMENT:   $100 (mandatory)

**COUNT 2:**

VIOLATION:                   21 U.S.C. § 841(a)(1) – Distribution of at least 500 Grams of a
                             Mixture and Substance Containing a Detectable Amount of
                             Methamphetamine

PENALTIES:                   Mandatory minimum of 10 years in prison and up to life in prison;
                             or
                             Fine of up to $10,000,000; or both fine and imprisonment
                             Supervised release of at least 5 years and up to life

SPECIAL ASSESSMENT:   $100 (mandatory)